64 F.3d 1458
 11 IER Cases 311
 Willis H. WILCOTT, Plaintiff-Appellee and Cross-Appellant
v.
MATLACK, INC., doing business as Matlack Systems, Inc., a
Pennsylvania corporation; Matlack Systems, Inc.
Employee Benefits Trust; John Erwin,
Defendants-Appellants and
Cross-Appellees.
 Nos. 94-1296, 94-1583.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 30, 1995.
 
 Gregg C. McReynolds, P.C., Englewood, CO, for defendants-appellants and cross-appellees.
 Nathan Davidovich and Steven W. Moore of Nathan Davidovich & Associates, Denver, CO, for plaintiff-appellee and cross-appellant.
 Before TACHA, LOGAN, and BRISCOE, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 These appeals arise from an action plaintiff Willis H. Wilcott initially filed in state court seeking redress for the denial of employee disability benefits, wrongful discharge, and associated contract and tort claims. After the case was removed to federal court, the district court dismissed all state claims as preempted by the Employee Retirement Income Security Act (ERISA), which "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. Sec. 1144(a). Three federal claims were then tried to the court: (1) denial of short and long-term disability benefits due under defendants' ERISA plan, see 29 U.S.C. Sec. 1132(a)(1)(B); (2) interference with ERISA rights (i.e., termination of employment in an attempt to avoid paying benefits), see 29 U.S.C. Sec. 1140; and (3) failure to provide requested information about the ERISA plan, see 29 U.S.C. Sec. 1132(c). The court entered judgment for plaintiff on the first claim and for defendants on the others. On appeal, defendants challenge the award of long-term disability benefits (appeal No. 94-1296),[1] and plaintiff objects to the decision not to impose a penalty under Sec. 1132(c) and the dismissal of his state law claims (cross-appeal No. 94-1583).[2]
 
 
 2
 * Most of the pertinent facts are undisputed. In January 1990, plaintiff's treating physician recommended that he take time off from work in an attempt to alleviate debilitating chest pains. Upon being advised of the situation, defendant Erwin (who was defendant Matlack, Inc.'s Western Regional Vice President) told plaintiff he could take a short-term disability leave of six months at half salary or several weeks at full pay. (Plaintiff alleges Erwin also assured him at this time that he would have his job for as long as he wished.) Plaintiff agreed to the shorter leave, wound up some pending matters, and went on disability commencing January 27, 1990. Five days later, plaintiff was notified that he had been terminated as a part of a general reduction in force.
 
 
 3
 Thereafter, plaintiff attempted to secure long-term disability benefits under defendants' ERISA plan, but his requests and inquiries elicited no response. He tried a position with another employer in April 1990, but this effort ended with his hospitalization a month later. After one more unsuccessful attempt at employment, plaintiff applied for and was awarded social security disability benefits retroactive to May 1990. He did not, however, ever receive long-term disability benefits from defendants.
 
 
 4
 Defendants assert that plaintiff did not satisfy the criteria for total disability benefits under the ERISA plan, i.e., that he did not "require[ ] regular medical supervision" and was not "in a continuous state of [vocational] incapacity" for the requisite time period, see App., Pl. ex. 1 (Employee Benefits Plan) at 29. Defendants also contend that plaintiff's post-termination employment undercuts any evidence that might otherwise indicate the requisite disability.
 
 
 5
 Defendants characterize these contentions as involving the construction of the ERISA plan and, accordingly, insist on de novo review of the district court's interpretation. We disagree. The dispositive issue is "not really the interpretation of the [ERISA plan], but rather a question of fact: whether [plaintiff] was totally and permanently disabled from any kind of work." Delaney v. Union Carbide Corp., 749 F.2d 17, 19 (8th Cir.1984); see Kirwan v. Marriott Corp., 10 F.3d 784, 790 (11th Cir.1994) (reversing summary judgment against ERISA plaintiff because of dispute over factual question of total disability). Thus, we will not disturb the district court's determination absent clear error. See, e.g., Hopkins v. Seagate, 30 F.3d 104, 106 (10th Cir.1994) (applying clear error standard to factual findings dispositive of ERISA claim).[3]
 
 
 6
 The district court rejected defendants' position on long-term disability for several reasons. First, the prerequisites for such disability were established by plaintiff's treating physician, who testified that he had provided regular medical supervision to plaintiff and that plaintiff was totally and continuously disabled from and after January 1990. Supp.App. 47-50. Moreover, echoing the physician's own views, see id. at 49, the district court deemed plaintiff's subsequent aborted attempts at employment to be consistent with this disability, rather than, as defendants contend, evidence of an unused capacity for work. Cf. Washington v. Shalala, 37 F.3d 1437, 1442-43 (10th Cir.1994) (recognizing same point in social security context). Finally, the court noted that under the ERISA plan, plaintiff's social security award, retroactive to May 1990, constitutes conclusive proof of his total disability thereafter. App., Pl. ex. 1 (Employee Benefits Plan) at 32 ("Notwithstanding the above [provisions regarding substantiation of total disability], the awarding of a primary Social Security Disability Benefit will be accepted by the Trust as proof of total disability and the continuation of such Social Security Disability Benefit will be accepted as proof of a continuing total disability.").
 
 
 7
 The record fully supports the district court's finding of a continuing total disability compensable under the ERISA plan. Accordingly, we affirm its award of long-term disability benefits pursuant to Sec. 1132(a)(1)(B).
 
 II
 
 8
 On cross-appeal, plaintiff asserts the district court should have imposed a penalty under 29 U.S.C. Sec. 1132(c), which grants the district court discretion to impose a penalty on any ERISA plan administrator "who fails or refuses to comply with a request for any information which such administrator is required ... to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested ... within 30 days after such request." 29 U.S.C. Sec. 1132(c)(1)(B). Plaintiff invoked this statutory remedy in conjunction with his allegations of repeated, unanswered requests regarding disability application procedures. The district court deemed the penalty unwarranted under the circumstances, particularly in light of plaintiff's failure to address his communications directly to the plan administrator. We must accept that determination absent an abuse of discretion. Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1111 (10th Cir.1994).
 
 
 9
 Plaintiff requested information and forms relating to long-term disability benefits under the ERISA plan by (1) a letter, concededly misaddressed, to the plan administrator, (2) a copy of that letter sent to the particular office where plaintiff had worked, and (3) personal communications with his sales manager, the regional vice president, and the head of human resources. Under appropriate circumstances, a Sec. 1132(c) penalty may be based on information requests such as plaintiff's that were not directed to the plan administrator. See Boone, 20 F.3d at 1109 n. 2 (letter addressed to company's counsel who "handled the business of the plan"); McKinsey v. Sentry Ins., 986 F.2d 401, 404-05 (10th Cir.1993) (if other personnel routinely answer requests from participants, their actions may be imputed to plan administrator). However, such circumstances have not been demonstrated here. Moreover, the district court did not deny relief on the legal ground that plaintiff had not made an enforceable request, but because in its judgment a penalty was not warranted. The record does not show that judgment to be an abuse of discretion.
 
 III
 
 10
 Finally, plaintiff asserts the district court erred in determining that his state law claims were preempted by ERISA. This court recently summarized the general principles governing ERISA preemption:
 
 
 11
 Before preemption will be found, three requirements must be met. There must be a state law, an employee benefit plan, and the state law must relate to the employee benefit plan....
 
 
 12
 A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Thus, even if a state law is not specifically directed toward the regulation of an ERISA plan or affects such a plan only indirectly, it can still be found to relate to a plan.
 
 
 13
 There is no simple test for determining when a law relates to a plan. This circuit has recognized four categories of laws which have been held preempted because they relate to ERISA plans.... First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.
 
 
 14
 Airparts Co. v. Custom Benefit Servs. of Austin, Inc., 28 F.3d 1062, 1064-65 (10th Cir.1994) (citations and quotations omitted). Application of these principles to particular state law claims is a legal matter that we review de novo. Id. at 1064.
 
 
 15
 The question here is whether the state contract and tort claims asserted by plaintiff seek to redress actions somehow associated with defendants' ERISA plan and, thus, fall into the fourth preemption category identified in Airparts. The district court stated: "A careful reading of the amended complaint reveals that the plaintiff's state law claims are in fact based on the proposition that the defendants discharged him to avoid paying disability benefits." Supp.App. 23. If this is a fair characterization of plaintiff's state law claims, preemption is indeed required because " 'the factual basis of the cause[s] of action involves an employee benefit plan.' " Milton v. Scrivner, Inc., 53 F.3d 1118, 1121 n. 3 (10th Cir.1995) (quoting Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir.1991)); see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (wrongful discharge claim preempted because it required plaintiff to prove "that an ERISA plan exists and the employer had a [benefit]-defeating motive in terminating the employment").
 
 
 16
 On the other hand, an employee may rely on state law to redress the breach of an employment contract, notwithstanding the presence of an ERISA plan, if the factual basis of the suit is independent of the rights and duties created by the plan. See Krause v. Dresser Indus., Inc., 910 F.2d 674, 676, 680 (10th Cir.1990). Our preemption analysis turns, then, on the factual basis of plaintiff's state law claims, which we construe with a strict focus on substance rather than form, see Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). The critical factual allegations of these claims are set out below, grouped by legal affinity for purposes of analysis.
 
 
 17
 The claims in the first group seek redress for the alleged breach of plaintiff's contract of employment:
 
 
 18
 [Wrongful Discharge ]
 
 
 19
 23. [Plaintiff] was wrongfully discharged from employment in breach of Matlack's and Erwin's assurance that [plaintiff] would have a job at Matlack for as long as he wished. That agreement was for adequate consideration and created an employment contract between [plaintiff] and Matlack.
 
 
 20
 [Breach of Contract ]
 
 
 21
 26. [Plaintiff] and Defendant Matlack, were parties to an employment agreement, as stated above.
 
 
 22
 27. The arbitrary termination of [plaintiff's] employment, without regard to his job performance, is a breach of this employment agreement.
 
 
 23
 28. [Plaintiff] undertook and continued employment and duly performed all conditions of the agreement to be performed by him until prevented by the Defendant, Matlack, from further performance, as stated herein.
 
 
 24
 Supp.App. 4. The basis for relief here is an employment agreement enforceable independently of any additional legal rights plaintiff may have had under the ERISA plan. Thus, it cannot be said that "the existence of a[n] [ERISA] plan is a critical factor in establishing [defendants'] liability," Ingersoll-Rand Co., 498 U.S. at 139-40, 111 S.Ct. at 483, or that plaintiff is simply "resorting to state law to avail [himself] of an alternative cause of action to collect [ERISA] benefits," Airparts Co., 28 F.3d at 1065. On the contrary, these "run-of-the-mill state-law claims," Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988), are essentially indistinguishable from the contract claim this court held not preempted in Krause, 910 F.2d at 680.
 
 
 25
 The claims in the second category arise out of the same alleged employment contract breach, but sound in tort:
 
 
 26
 [Interference with Prospective Financial Advantage ]
 
 
 27
 31. Through the actions of Defendant Erwin, which actions were intentional and exceeded the scope of his official duties, [plaintiff] was deprived of prospective financial advantages to be gained through his continued employment with Matlack.
 
 
 28
 [Outrageous Conduct ]
 
 
 29
 34. Defendants Matlack and Erwins' course of conduct towards [plaintiff], as described above, is so extreme in degree as to go beyond the bounds of decency and is regarded as atrocious and intolerable in a civilized community.
 
 
 30
 35. Defendants Matlack and Erwins' acts were extreme and outrageous and were done with the intent to cause Plaintiff severe emotional distress.
 
 
 31
 Supp.App. 5. Because these tort allegations share the same ERISA-independent factual basis as the contract claims with which they overlap, the analysis set out above applies.
 
 
 32
 The third class of claims seeks damages resulting from plaintiff's reliance on defendants' alleged misrepresentations that utilizing disability leave benefits would not jeopardize his job:
 
 
 33
 [Negligent Misrepresentation ]
 
 
 34
 44. Defendant Matlack, through its agents, made representations to [plaintiff] that [plaintiff] would be permitted to take a six-week leave of absence, on full salary, from Matlack, and that this would not in any way interfere with his ability to remain employed with Matlack.
 
 
 35
 45. The aforementioned representations to [plaintiff], were made in the course of business, profession and employment of the agent making the representations, and as an employee and agent of Defendant, Matlack.
 
 
 36
 46. Such representations were false.
 
 
 37
 47. Matlack failed to exercise reasonable care and competence in communicating said information to [plaintiff].
 
 
 38
 48. Defendant Matlack, should reasonably have expected that [plaintiff] would rely on said representations.
 
 
 39
 49. [Plaintiff] relied on said representations when he agreed to a leave of absence from his employment, and such reliance was justified.[Fraudulent Misrepresentation ]
 
 
 40
 52. The aforesaid representations by Matlack, described in Paragraph 44, were false.
 
 
 41
 53. At the time said representations were made, Defendants Matlack and Erwin knew that they were false or were indifferent as to their truth or falsity.
 
 
 42
 54. Said representations were material to [plaintiff] in deciding whether or not to accept the offer of a leave of absence.
 
 
 43
 55. Matlack and Erwin made said representations with the intent of inducing [plaintiff] to rely on them and accepting a leave of absence from work.
 
 
 44
 56. [Plaintiff], did in fact, rely on the representations, and acted in accordance therewith in accepting a leave of absence from Matlack, and such reliance was justifiable.
 
 
 45
 Id. at 6-7. The tie between these allegations and the ERISA plan is plain and substantial. Defendants' alleged misrepresentations relate directly to the nature of plaintiff's rights under the plan--i.e., whether employee disability benefits are secured by guarantees against adverse employment consequences. Further, to establish defendants' liability, plaintiff would have to show the reasonableness of his reliance on the alleged misrepresentations regarding disability-leave rights, which would require resort to the terms of the ERISA plan. "Because the court's inquiry must be directed to the plan, th[ese] ... cause[s] of action 'relate[ ] to' an ERISA plan" and, therefore, are preempted. Ingersoll-Rand Co., 498 U.S. at 140, 111 S.Ct. at 483.
 
 
 46
 The fourth and final category consists of a single contract claim with multiple factual bases, some related to the ERISA plan like the claims in the third group, some independent of the plan like those in the first and second:
 
 
 47
 [Promissory Estoppel ]
 
 
 48
 38. Defendant Erwin, while in the scope of his employment with Defendant Matlack, and on behalf of Matlack, made the following promises to [plaintiff]:
 
 
 49
 a. That [plaintiff] would be permitted to take a six-week leave of absence from Matlack, which leave of absence would not in any way interfere with [plaintiff's] right to continued employment with Matlack;
 
 
 50
 b. That [plaintiff's] job would not be in jeopardy as a result of taking time off; and,
 
 
 51
 c. That [plaintiff] would have a job at Matlack for as long as he wished.
 
 
 52
 39. Defendant Erwin, should have reasonably expected that these promises would induce material reliance thereon by [plaintiff].
 
 
 53
 40. [Plaintiff], in fact, reasonably believed and justifiably relied upon these promises when he undertook a six-week leave of absence with Matlack.
 
 
 54
 41. The doctrine of Promissory estoppel must be applied in order to prevent injustice under the circumstances alleged herein.
 
 
 55
 Supp.App. 5-6. Insofar as this claim rests on the alleged promises of noninterference/nonretaliation referred to in paragraphs 38a and 38b, it is clearly preempted, although it is not preempted to the extent it is based on the ERISA-independent promise of continued employment per se alleged in paragraph 38c. See, e.g., Sorosky v. Burroughs Corp., 826 F.2d 794, 800 (9th Cir.1987) (reflecting similarly discriminating preemption analysis of single breach of contract claim, holding ERISA-related theories of recovery preempted and ERISA-independent theories viable).
 
 
 56
 In finding preemption the district court may have been influenced by the fact that plaintiff's first complaint (not in the appellate record) apparently included the factual contentions underlying the tort and contract claims in counts alleging only ERISA violations. We hold that in his second, more artfully pleaded complaint, plaintiff avoided preemption by separating the contract and tort claims from entanglement with the ERISA claims. Although the district court erred in dismissing these claims as preempted by ERISA, we may affirm the district court on any legal ground supported by the record. See Jetcraft Corp. v. Flight Safety Int'l, 16 F.3d 362, 364 (10th Cir.1993).
 
 
 57
 Plaintiff bases his employment contract claim on a single oral statement by defendant Erwin at a time when plaintiff was totally disabled. We are satisfied, based on the pleadings alone, that plaintiff could not prevail on the contract claims. First, there are statute of fraud problems. See Colo.Rev.Stat. Sec. 38-10-112(1) ("agreement that by the terms is not to be performed within one year after the making thereof" must be "in writing and subscribed by the party charged therewith"); Chidester v. Eastern Gas & Fuel Assocs., 859 P.2d 222, 224 (Colo.App.1992) (in oral employment contract, neither partial performance nor payment of compensation sufficient to avoid statute of frauds defense). Further, what consideration supports an employment contract agreed to by one totally disabled and unable to perform? Even assuming a valid contract, because plaintiff was totally and permanently disabled he could not perform--hence, no damages. Plaintiff's inability to perform would also support dismissal of the aspects of the promissory estoppel claim unrelated to the employee benefits.
 
 
 58
 Plaintiff's tort claims also fail. Aside from interfering with plaintiff's right to employee benefits (preempted by ERISA), there can be no "unlawful interference with prospective financial advantages to be gained through [plaintiff's] continued employment," Supp.App. 5, if plaintiff's total disability would prevent him from working. Finally, plaintiff did not plead or produce evidence of actions by defendants that rise to the level of "atrocious and utterly intolerable" conduct required for an outrageous conduct claim. See Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753, 756 (1970).
 
 
 59
 For the reasons stated we AFFIRM the judgment of the district court.
 
 
 
 [1]
 We deny plaintiff's motion to dismiss defendants' appeal for filing an untimely opening brief. See Mullen v. Household Bank-Federal Sav. Bank, 867 F.2d 586, 588 (10th Cir.1989)
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument
 
 
 [3]
 Defendants also assert, without any supporting citation to the record, that "the plan administrator had discretion to deny [plaintiff] benefits" and, consequently, the denial of benefits is subject to judicial review under a deferential "arbitrary and capricious" standard, pursuant to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Reply Br. of Defendants-Appellants at 7. The appellate record, however, contains "no evidence that under [defendants' ERISA] plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." Bruch, 489 U.S. at 111, 109 S.Ct. at 955. Hence, no deference is due to defendants' proffered rationale for the denial of benefits. See id. at 115, 109 S.Ct. at 956-57