Furthermore, even if the new evidence were properly considered in determining plaintiff's benefits claim, it was error for the majority to weigh this evidence itself rather than remand to the Plan Administrator. Unless a determination that plaintiff is still not entitled to benefits in light of the new evidence would be arbitrary and capricious, this court may not weight the evidence itself and grant plaintiff benefits. *See University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 841 (6th Cir. 2000) (discussing earlier remand in same case to Plan Administrator to reweigh evidence when some erroneous evidence was initially considered by Plan Administrator). A finding that the new evidence does not entitle plaintiff to benefits would not be arbitrary and capricious, as noted by the district court. The new medical evidence does not contain a certification that plaintiff's disability is permanent, as required by Benefit Schedule A-1 of the Plan. The majority's suggestion that the term "disability" includes the concept of permanence within it is belied by the Plan's language, which requires a physician's certification that "the *Disability* is likely to be *permanent* during the remainder of the Participant's life." This language indicates that the Plan considers permanence to be something more than disability, as even after a showing of disability a certification of permanence is required. Plaintiff has not presented medical certification of the permanence of his disability, and would therefore not necessarily be entitled to disability benefits under Benefit Schedule A-1 even if the new evidence was considered. In any case, the proper course would be a remand.

For these reasons, I respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0254P (6th Cir.)
File Name: 00a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――

ROBERT E. WILLIAMS,
      *Plaintiff-Appellant,*

            *v.*                                No. 98-6514

INTERNATIONAL PAPER
COMPANY,
      *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-02044—Bernice B. Donald, District Judge.

Submitted: November 5, 1999

Decided and Filed: July 31, 2000

Before: KEITH, NORRIS, and CLAY, Circuit Judges.

―――――――――

## COUNSEL

**ON BRIEF:** Martin E. Regan, Jr., REGAN & BOSHEA, New Orleans, Louisiana, for Appellant. David F. Dabbs, James A. Sonne, McGUIRE, WOODS, BATTLE & BOOTHE, Richmond, Virginia, Robert D. Hudson, GREENEBAUM, DOLL & McDONALD, Covington, Kentucky, for Appellee.

CLAY, J., delivered the opinion of the court, in which KEITH, J., joined.  NORRIS, J. (pp. 18-20), delivered a separate dissenting opinion.

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiff, Robert E. Williams, filed an action against Defendant, International Paper Company ("IP"), for allegedly violating the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B) by denying Williams disability retirement benefits.  The district court granted summary judgment for IP and Williams appealed.  For the following reasons, we **REVERSE** the district court's finding that the Plan Administrator did not act arbitrarily and capriciously in denying Williams' disability retirement benefits.

I.  Factual Background

Williams worked for IP at its Natchez, Mississippi facility as a wastewater operator from 1968 until he retired in 1993. Williams participated in IP's Pension Plan ("the Plan") during his employment, and was fully vested in the Plan at the time of the events described herein.  In February of 1993, Williams suffered a series of "transient ischemic episodes," commonly referred to as passing strokes, while working at IP. Williams was hospitalized for several days but did not return to work. Shortly thereafter, Williams applied for and received short-term disability benefits from IP.[1]

On December 8, 1993, Williams applied for permanent disability retirement benefits.  IP sent Williams' file to its outside consultant, Dr. H. Michael Belmont at the Life

---

[1]Short-term disability benefits are provided for up to thirty-nine weeks under a non-ERISA plan that is governed by different eligibility standards and are not at issue in this case.

contains a definition of "Eligible Employee" different from the general Plan definition (the general Plan definition states that Benefit Schedules may include different definitions of "Eligible Employee" specific to themselves):

> "Eligible Employee" means any *Employee* covered by the Primary Mill Joint Pension Council who *is* employed at [Natchez Mill].

(emphasis added).  The Benefit Schedule does not contain a schedule-specific definition of "Employee" as it is used in the above definition, so the Plan's general definition applies. According to this definition:

> "Employee" means, any person who *is employed* by the Company or an Affiliated Company and is receiving remuneration for personal services rendered to the Company or an Affiliated Company or who would be receiving such remuneration except for an authorized Leave of Absence.

(emphasis added).  Therefore, the Schedule A-1 definition of "Eligible Employee" clearly refers only to those currently working for defendant, and excludes plaintiff.  Because, as noted above, Benefit Schedule A-1 only pertains to these "Eligible Employees," it is irrelevant whether plaintiff would fit into the definition of "Participant" referenced within the benefit schedule.  Disabled former workers in plaintiff's situation may be able to receive disability benefits as "Participants" under other benefit schedules, but Benefit Schedule A-1 excludes such former workers from its coverage.

It should also be noted that the Plan Administrator is not reversed unless his or her conclusions are arbitrary and capricious. Even assuming, *arguendo*, my above analysis was incorrect, it certainly identifies a sufficient rational basis for the Plan Administrator's decision to meet this arbitrary and capricious standard.  Therefore, I would affirm the district court's grant of summary judgment to defendant.

————————

**DISSENT**

————————

ALAN E. NORRIS, Circuit Judge, dissenting.    I respectfully dissent because I believe the Plan Administrator did not act arbitrarily and capriciously, but instead followed the plain meaning of the Plan in denying plaintiff benefits.

The majority concludes that the Plan provides disability benefits for those who become disabled after leaving defendant's employ. It makes little sense that the Plan would do so. The normal conception of disability benefits is compensation for an employee no longer able to work, to substitute for the wages he would otherwise be earning. The majority's conception would entitle persons to disability benefits who have no desire to work and would not ordinarily do so. Assume, for example, a worker who retires at age sixty-five and, although able-bodied, performs no gainful work thereafter. At age ninety he suffers from some disease or accident, rendering him disabled. Under the majority's reading of the Plan, he would be entitled to disability benefits.

Not only does the majority's view clash with the usual meaning of disability benefits, but it also contradicts the plain meaning of the Plan language. The majority correctly applies Benefit Schedule A-1 of the Plan to plaintiff, and focuses on its definition of "Disability":

a total disability which is a medically determinable physical or mental impairment which renders the *Participant* incapable of engaging in any substantial gainful employment activity productive in nature . . . .

(emphasis added by majority). The majority correctly points out that the Plan's general definition of "Participant" would include plaintiff, as a person separated from service, and concludes that plaintiff is entitled to benefits. However, Benefit Schedule A-1 begins with the directive that it is applicable only to "Eligible Employees." The Schedule also

Extension Institute in New York, New York requesting an evaluation of whether Williams was totally disabled. On December 21, 1993, Dr. Belmont reviewed the file and prepared a memorandum wherein he concluded that Williams was not totally disabled within the meaning of the Plan. The Plan Administrator subsequently denied Williams' disability claim.

On January 18, 1994, a disability determination letter was prepared by the pension office stating in relevant part:

Please furnish Mr. Williams a copy of this memo and advise him of his rights to appeal our decision. Should Mr. Williams decide to appeal, he should submit evidence which would substantiate his claim of total and permanent disability.

(J.A. at 128).

On June 8, 1994, Williams appealed the denial of his benefits. IP forwarded the file to Dr. Belmont on June 24, 1994, for further review. On July 6, 1994, Dr. Belmont concluded once again that Williams did not meet the total disability standard required by the Plan. As a result, IP denied Williams' disability claim again. On September 7, 1994, an internal memorandum regarding Williams' disability determination was prepared by the pension office stating in part:

All the evidence in this case has been thoroughly evaluated, including any additional information received since the original submission of the claim. A careful review has been made, and we have concluded that the request for Disability Retirement must be denied . . . . Please furnish Mr. Williams with a copy of this memo and advise him of his rights to appeal our decision. Should he decide to appeal, he should submit evidence which would substantiate his claim of total and permanent disability.

(J.A. at 183).

On August 21, 1996, IP received a letter from United States Senator Trent Lott requesting that IP reevaluate Williams' disability claim. As a result, IP initiated a second appeal of the decision to deny Williams disability retirement benefits on August 28, 1996. IP forwarded Williams' file for evaluation to Wausau Insurance Company, its outside consultant in Wausau, Wisconsin, on August 28, 1996.

In order to substantiate his second appeal, Williams submitted letters from two physicians who had examined him the previous May. One of the letters, dated May 15, 1996, was from Dr. Aziz Ahmed, and stated in relevant part as follows:

It is important to note that Mr. Robert Williams has suffered a major stroke affecting his left side that has rendered his left side, hand, upper and lower extremities and his face completely disabled. He has severe physical limitations in terms of walking and holding objects. On account of his facial nerve paralysis, he has difficulty speaking clearly, also. His balance and safety are also of concern. If he is allowed to be in a situation where he needs to walk up and down stairs or handle machinery, that could be detrimental to him or to his health. On account of his speech problem, he has a difficult time expressing his thought process to other people. His age also needs to be under consideration being 50 years old and suffering from high blood pressure that tends to run up and down during his previous visits with me. It makes him a difficult candidate for vocational training because, again, stress can aggravate his high blood pressure and that could cause further stroke. It is to be noted that I have known Mr. Robert Williams personally for some time and he has tried to get some jobs, but his main problem is that his physical limitation has barred him from other people hiring him for any kind of jobs.

(J. A. at 278.) The second letter dated May 24, 1996, was from Williams' physician, Dr. Gold, and stated in relevant part as follows:

---

### III. Conclusion

In sum, we conclude that as a matter of law, the Plan Administrator acted arbitrarily and capriciously by contravening the plain language of the Plan and subsequently failing to review the additional medical evidence that Williams submitted before denying his disability. The additional medical evidence clearly establishes that Williams was disabled within the meaning of the Plan. There is no evidence to the contrary in the record and there is no factual dispute that would prevent entry of judgment in Williams' favor. Therefore we **REVERSE** and **REMAND** with instructions to the district court to enter summary judgment in favor of Williams[6] granting disability retirement benefits, determining the appropriate amount of benefits due under the Plan, the amount of interest, and whether other damages and/or attorney's fees are warranted.

---

[6]We note that Plaintiff failed to file a cross motion for summary judgment; however, the court of appeals may direct the district court to order summary judgment for the losing party under appropriate circumstances even if the losing party did not appeal the denial of summary judgment or argue for a grant of summary judgment on appeal. *See Trustees of the Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 594-95 (6th Cir. 2000).

In *Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991), the plaintiff was granted retroactive benefits because the termination of his benefits was based upon the selective review of medical evidence. The Seventh Circuit upheld the district court's decision on the ground that the conclusion to terminate the plaintiff's benefits was unreasonable based on its selective review of the evidence. *Id.* Similarly, the Plan Administrator in this case selectively reviewed the medical evidence that Williams submitted by instructing its consultants not to review the additional medical evidence. All the while, the Plan Administrator informed Williams that it had reviewed all medical information, including the newly submitted medical information, when in fact it had not. Hence, like *Govindarajan*, the Plan Administrator's selective review of Plaintiff's additional medical evidence was an unreasonable basis upon which to deny Williams' disability benefits.

It is also appropriate to retroactively grant disability benefits without remanding the case where there are no factual determinations to be made. In *Canseco v. Construction Laborers Pension Trust for Southern California*, 93 F.3d 600, 609 (9th Cir. 1996), the Ninth Circuit held that a remand is inappropriate when there are no factual determinations to be made. Here, the district court adjudicated the issue of whether Plaintiff was disabled when it concluded that even if it were to consider the two additional letters, they would not render Williams as disabled as they did not reference the length of Williams' disability. Therefore, having concluded that the district court erred in finding that Williams was not disabled, there are no factual determinations to be made, and the proper course of relief is to retroactively grant Williams his disability benefits. *See id*; *see also Godfrey v. Bellsouth Telecomms. Inc.*, 89 F.3d 755, 760-61 (11th Cir. 1996) (holding that retroactive benefits was the proper remedy where district court made a finding that claimant was disabled).

Mr. Williams is a patient of mine who had a stroke which caused paralysis involving his left side. He has limitations in walking and would be detrimental to his health. He also has multiple other medication problems that his other physicians are caring for. At this point from my neurologic point of view I believe he's disabled. . . .

(J. A. at 277.)

The Plan Administrator instructed the consultants in Wausau, Wisconsin not to consider the two additional letters from Dr. Ahmed and Dr. Gold in evaluating Williams' claim for disability benefits. After reviewing Williams' file without the additional medical evidence, IP rejected Williams' request for disability benefits and sent Williams a denial letter on December 6, 1996 stating in part:

Upon receipt of your request for Disability Retirement and following your submission of further medical evidence, your claim was independently reviewed by our medical consultants . . . . All the evidence in your case has been thoroughly evaluated, including any additional information received since the original submission of your claim . . . . Should you decide to appeal, you should submit additional medical evidence which would substantiate your claim of total and permanent disability.

(J.A. at 194).

IP claims that it did not consider Williams' additional medical evidence because it determined that Williams appeared to suffer a stroke after his employment was terminated and it interpreted the Plan as only applying to individuals who became disabled while working under the employment of IP.[2] Williams contends that the letters from

_____

[2] We note that nothing in the record substantiates IP's allegation of Williams suffering a subsequent stroke after leaving IP.

the doctors refer to the same series of strokes that he suffered while under the employment of IP.

On January 16, 1998, Williams filed a lawsuit pursuant to ERISA, 29 U.S.C. §1132 (a)(1)(B), alleging that Defendant wrongfully denied him disability benefits under the retirement plan of IP. On September 9, 1998, IP filed a motion for summary judgment. The district court granted IP's motion. In granting summary judgment, the district court acknowledged that the additional letters submitted by Williams were not considered by the Plan Administrator at the time of its final decision, inasmuch as the letters reflected that Williams suffered a stroke after terminating his unemployment with IP, and the Plan only provided coverage for disabilities incurred while under IP's employ. As such, the district court declined to consider the letters in reaching its decision. The district court further concluded that even if it were to consider the letters, its decision would not be different as neither letter made reference to the length of Williams' disability.

## II. Discussion

### A.

We review the district court's grant of summary judgment in an action involving an ERISA claim *de novo. Killian v. Healthsource Provident Adm'rs*, *Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). Summary judgment is appropriate so long as "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting FED.R.CIV.P. 56(c)). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To determine whether summary judgment is appropriate, we view the evidence and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *Id*.

there is no medical evidence to contradict the conclusions of Dr. Ahmed and Dr. Gold, both of whom examined Williams.

When read together, it would be unreasonable to conclude that the two letters from Dr. Ahmed and Dr. Gold, fail to demonstrate that Williams' disability is "likely to be permanent," as required by the language of the Plan. Furthermore, it is reasonable to conclude that had the consultants been properly instructed and had they considered the two letters submitted by Williams to substantiate his claim, they would have opined that Williams was disabled within the meaning of the Plan. As such, we hold that the district court's finding is clearly erroneous.

While we believe that the proper remedy is to grant Williams his disability benefits, the dissent argues that the case should be remanded.[5] Indeed, remand is the proper remedy in some cases. *See Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) (remanding because adequate findings of fact were not made by court or agency); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir. 1995) (remanding when it was unclear that the claim should be granted). However, in other cases, where the review of the medical evidence was arbitrary and capricious or unreasonable, the proper remedy is to retroactively grant benefits without a remand. *See Govindarajan v. FMC Corp.*, 932 F.2d 634, 637 (7th Cir. 1991); *see also Quinn v. Blue Cross and Blue Shield Ass'n,* 161 F.3d 472, 477 (7th Cir. 1998); *Grossmuller v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 715 F.2d 853, 858-59 (3d Cir. 1983). Such is the case here.

---

[5] The dissent relies upon *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 851 n.13 (6th Cir. 2000). In *University Hospitals*, the Court could not order an award of benefits because the plan administrator did not have the opportunity to consider whether certain expenses were covered under the plan. *Id.* Therefore, it remanded the case so that the issue of expenses could be addressed. We find this case to be inapplicable because the Plan Administrator in the instant case had the opportunity to consider the additional medical evidence, but declined to do so.

disabled";[4] that Williams has severe physical limitations in terms of walking and holding objects, and that situations requiring Williams to perform such activities could be detrimental to him or his health; that as a result of his facial nerve paralysis, Williams has difficulty speaking clearly; and that his physical limitations have prevented him from being hired for any type of employment. (J.A. at 278.) Additionally, Dr. Gold echoed Dr. Ahmed's view that Williams' limitations in walking would be detrimental to his health, and that Williams was disabled. (J.A. at 277.) Significantly, Dr. Gold and Dr. Ahmed describe Williams' medical condition as serious and debilitating. Neither indicate that Williams' condition has improved since his series of strokes; nor do they indicate that his condition will improve substantially from medical treatment or the passage of time.

Although the letters do not expressly state that Williams' disability is "likely to be permanent," the left side of his body is described as "completely disabled." His balance, safety, and ability to walk and speak are all called into question. Moreover, Williams' myriad of health problems, as set forth in the physicians' letters, clearly render him unable to work indefinitely. Dr. Ahmed indicates that Williams' age and high blood pressure are of concern, and because stress can aggravate his high blood pressure and cause further stroke, he is "a difficult candidate for vocational training" whose physical limitations have barred him from other jobs. If curtailment of a major life activity and the ability to work in the foreseeable future can fairly be said to describe a condition of a disability that is "likely to be permanent," then Williams is totally and permanently disabled by any measure. The conclusion that Williams' disability is "likely to be permanent" is made all the more apparent by the fact that

---

[4]Complete[ly] is defined as "brought to an end" or "concluded." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 235 (10th ed. 1993). As noted, ERISA plan provisions are interpreted according to their plain and ordinary meaning. *See Perez*, 150 F.3d at 556.

A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). In *Firestone*, the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo* review of the trustee's benefit determination. *Id*. at 115. Conversely, where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review. *Id*. at 110-12.

This Court has specifically interpreted *Firestone* to require that a plan expressly give discretionary authority to the administrator. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990). However, the Court has also recognized that a finding of such authority does not depend on the plan's use of the word "discretionary" or any other magic word. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571 (6th Cir. 1992). Furthermore, discretion is not an all-or-nothing proposition inasmuch as a plan can give an administrator discretion with respect to some decisions but not others. *See Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir. 1991).

On appeal, Williams contends that although the Plan Administrator had discretion with respect to some decisions, the Plan Administrator did not have the discretion to determine eligibility for disability retirement. Specifically, Williams argues that the language in the plan defining disability divests the discretion from the plan administrator to determine eligibility for disability retirement benefits.[3]

---

[3]Benefit Schedule A-1, the relevant retirement plan, states in part that a participant can obtain disability benefits "provided that the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify that the Disability is likely to be permanent during the remainder of the Participant's life" (J.A. at 120.)

Mindful that a plan administrator may have discretion with respect to some decisions and not all, and having thoroughly reviewed the Plan, we find that the language in the Plan grants the Plan Administrator discretion to determine eligibility for disability retirement benefits.

Williams misconstrues the unambiguous language of the Plan. When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). In applying the "plain meaning" analysis, we "must give effect to the unambiguous terms of an ERISA plan." *Id.* (quoting *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996)). Construing the language in an ordinary and popular sense, the Plan clearly gives the Plan Administrator authority to determine eligibility for disability benefits inasmuch as the Plan Administrator must "find that the Disability is likely to be permanent during the remainder of the Participant's life." (J.A. at 120). Moreover, we have held in similar cases that the plan administrator has discretionary authority. *See Perez*, 150 F.3d at 557 (claimant must provide "satisfactory evidence" as part of proof of claim); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996) (claimant must submit "satisfactory proof of [t]otal [d]isability to us"); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991) (disability determined "on basis of medical evidence satisfactory to the [i]nsurance [c]ompany"). Contrary to Williams' proposition, the requirement of a physician certifying that a participant is disabled does not dilute the discretionary authority of the Plan Administrator to determine eligibility. Accordingly, we hold that the district court was proper in applying the arbitrary and capricious standard of review.

## B.

Having determined the appropriate standard of review, we now address whether IP's interpretation of the Plan can be

disability benefits regardless of when he became disabled as currently reflected by the language governing the applicable disability benefits section.

## C.

Although the district court initially declined to consider the additional evidence submitted by Williams, it found that consideration of the two additional letters from Dr. Ahmed and Dr. Gold would not have changed the outcome in any event because the letters do not specifically reference the duration of Williams' disability -- i.e., the letters do not expressly describe Williams' condition as being "totally and permanently" disabled. In light of the evidence provided, and the plain language of the Plan, we disagree with the district court's finding.

Factual findings inherent in deciding an ERISA claim are reviewed for clear error. *See Simpson v. Ernst & Young*, 100 F.3d 436, 440 (6th Cir. 1996). *See Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1459-60 (10th Cir. 1995) (finding that "whether [plaintiff] [is] totally and permanently disabled from any kind of work" is a question of fact). A finding of fact is clearly erroneous only when although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer*, 470 U.S. 564, 573 (1985).

Pursuant to the Plan, an individual does not qualify for disability benefits unless the disability "is likely to be permanent during the remainder of the Participant's life." (J.A. at 120.) Contrary to the district court's finding, we believe that the two additional letters submitted by Williams establishes that he was disabled within the meaning of the Plan. For example, the letter from Dr. Ahmed stated that Williams' stroke has rendered his left side "completely

cannot be used to contradict or supersede terms in an ERISA plan. To do so would be in direct opposition to Congress' intent behind the disclosure requirements which require a participant to have adequate notice of the manner in which an ERISA plan is to be administered. *Id*. at 402 (stating that such a requirement lends predictability and certainty to employee benefit plans).

Finally, it is of no moment that the Plan Administrator has always interpreted the Plan as only covering disabilities incurred while under the employment of IP. Though a Plan Administrator has interpreted a provision in a consistent manner over time, the Plan Administrator's interpretation is not immune from being arbitrary and capricious. *See Dennard v. Richards Group Inc.*, 681 F.2d 306, 318 (5th Cir. 1982) (holding if interpretation of an employee benefit plan by its administrator is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious even though consistently applied); *Morgan v. Mullins*, 643 F.2d, 1320, 1324 n.4 (8th Cir. 1980).

The dissent argues that the Plan Administrator acted rationally in this case because, according to the dissent, Williams is not an "eligible employee" as defined within the Plan. The dissent claims that Williams is not an eligible employee because he is no longer employed by IP. The dissent further claims, via a hypothetical, that under the majority view, an individual who retires from a company at age sixty-five may at any time thereafter seek disability benefits from that company, even if the individual does not become disabled until some twenty-five years after he retires. The dissent's position and inapposite hypothetical misses the mark because in the case at hand, Williams became disabled while employed for IP and first sought disability benefits at that time. He did not become disabled as a result of "some disease or accident" after he left IP's employ as contemplated in the dissent's hypothetical. His current disability status is directly related to the strokes that he suffered while he was an employee at IP. In any event, under the provisions of the Plan, Williams would be an "eligible employee" entitled to

sustained under the arbitrary and capricious standard of review. This Court has noted that the arbitrary or capricious standard is the least demanding form of judicial review of administrative action. *See Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1993). When applying the deferential standard of arbitrary and capricious, the Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis*, 887 F.2d at 693.

On appeal, Williams contends that the Plan Administrator acted arbitrarily and capriciously by failing to consider additional medical evidence that he submitted during the second appeal of his denial --the two letters submitted by Dr. Ahmed and Dr. Gold. In advancing his argument, Williams claims that he should be entitled to disability benefits whether he became totally disabled while working under the employment of IP or whether he became totally disabled after retiring. The Plan Administrator interpreted the Plan as only applying to individuals that become disabled while employed with IP, and therefore refused to consider the additional evidence. After reviewing the language of the Plan, we hold that the Plan Administrator acted arbitrarily and capriciously in failing to consider additional medical evidence in light of the Plan's provisions.

The relevant terms are defined within the plan. Pursuant to Benefit Schedule A-1, the governing provision of the Plan, "Disability" or "Disabled" means:

a total disability which is a medically determinable physical or mental impairment which renders the *Participant* incapable of engaging in any substantial gainful employment activity productive in nature, provided that the Plan Administrator finds, and a physician or physicians designated by the Plan

Administrator certify, that the Disability is likely to be permanent during the remainder of the *Participant*'s life.

(J. A. at 120) (emphasis added).  Under Article 1, § 1.39 of the Plan, "Participant" is defined as "any Eligible Employee who becomes covered by the Plan as provided in Article II and shall include any individual who has separated from service or ceased to be an Eligible Employee for whom there is still a liability under the Plan."  (J.A. at 52.)  Benefits Schedule A-1, defines "Eligible Employee" as "any Employee covered by the Primary Mill Joint Pension Council who is employed at [Natchez Mill]." (J. A. at 120-21.)  Article I, § 1.54 defines "Separated from Service" as "any Employee['s] . . . []death, retirement, resignation, discharge or any absence that causes him to cease to be an Employee." (J.A. at 54.)

IP's interpretation that an employee must become disabled while under its employment clearly contravenes the plain language of the Plan.  Though the Plan defines a "participant" as one who is an "eligible employee," the Plan Administrator's interpretation turns a blind eye to the plain language of the Plan which explicitly defines participant as including one that "separates from the company or ceases to be an eligible employee." (J.A. at 54.)  Interpreting the plain language of the Plan "in an ordinary and popular sense," as this Court is required to do, it is clear that the participant seeking disability benefits need not be employed at the time the disabling event occurred.  *See Perez,* 150 F.3d at 556.  While the Plan Administrator may have discretionary authority to interpret the language in the Plan, to resolve ambiguities, inconsistencies, and omissions, the Plan Administrator may not contravene the plain language of the Plan. *See Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3rd Cir. 1997) ("A plan administrator may have discretion when interpreting the terms of the plan; however, the interpretation may not controvert the plain language of the document"); *see also Swaback v. American Info. Techs. Corp.*,  103 F.3d 535, 540 (7th Cir. 1996) (holding that administrators or fiduciaries of ERISA plan act arbitrary and

capricious if they controvert plain meaning of plan). Furthermore, we need not defer to the Plan Administrator's interpretation because under the facts of this case, the provision governing "disability" does not contain any ambiguous terms which can be reasonably interpreted in conflicting ways. *See Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 (6th Cir. 1992); *see also Davis v. Burlington Indus.,* 966 F.2d 890, 895 (4th Cir. 1992) ("If the plan language is unambiguous, . . . we would not defer to a contrary interpretation by the [plan administrator].").

Moreover, a thorough examination of the Plan has failed to reveal any language remotely suggesting that an employee must become disabled while working under the employment of IP and in that connection, IP has failed to provide any support for its interpretation of the Plan.  The only documents in the record intimating that a participant must become disabled while employed with the company are the letters from IP denying Williams' disability retirement. However, a letter denying a participant's disability benefits is insufficient to provide an employee with the requisite notice of plan provisions mandated by ERISA § 1102(a)(1).  It is well established that an ERISA plan  must be in writing.  29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument.").  The writing requirement ensures that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (quoting H. Rep. No. 1280, 93d Cong., 2d Sess. 297, reprinted in 1974 U.S. Code Cong. & Admin.  News 5038, 5077-78).  Suffice it to say, oral representations or other informal statements cannot be used to contradict or supersede the terms of an ERISA plan. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998) (*en banc*); *Musto v. American General Corp.*, 861 F.3d 897, 910 (6th Cir. 1988). Additionally, written documents which do not amend the plan may not be used to contradict or supersede the terms of an ERISA plan. *See Sprague*, 133 F.3d at 403.  Accordingly, a letter rejecting an individual's disability retirement benefits