**Thomas S. DEEGAN, a single person, Plaintiff–Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant–Appellee.**

**Thomas S. Deegan, a single person, Plaintiff–Appellee,**

v.

**Continental Casualty Company, an Illinois corporation, Defendant–Appellant.**

**Nos. 98–15071, 98–15153.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1999.

Decided Feb. 3, 1999.

---

**504**

Wayne C. Arnett, Arnett & Arnett, Tempe, Arizona, for the appellant-cross-appellee.

Wm. Charles Thomson, III, Gallagher & Kennedy, P.A., Phoenix, Arizona, for the appellee-cross-appellant.

Before: SNEED, TASHIMA and SILVERMAN, Circuit Judges.

SNEED, Circuit Judge:

Appellant and cross-appellee Thomas S. Deegan ("appellant") appeals from the decision of the District Court for the District of Arizona which concluded that appellant was not entitled to disability benefits for his partial disability under the terms of his insurance policy after he began a second job.

Appellee and cross-appellant Continental Casualty Company ("appellee") cross-appeal from the initial decision of the district court which concluded that appellant was totally disabled under the terms of the policy following his accident.

We have jurisdiction under 28 U.S.C. § 1291 and hold that, pursuant to principles of contract construction, appellant was disabled only until he began earning more than his pre-disability salary. Accordingly, we affirm the decision of the district court in its entirety.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Insurance Policy.

Appellee issued appellant the insurance policy prior to the accident and it became effective on January 1, 1989. The policy provided disability benefits to CCL Industries, Inc. ("CCL") employees, including appellant. The policy defines "Total Disability" as follows:

"Total Disability" means that, during the Elimination Period and Insured Employee Occupation Period shown in Statement 4 of the Application, the Insured Employee, because of Injury or Sickness, is:

(1) Continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

The policy defines "Partial Disability" as follows:

"Partial Disability" means that You, because of Injury or Sickness, are:

(1) continuously unable to perform the substantial and material duties of Your regular occupations;

(2) under the regular care of a licensed physician other than Yourself; and

(3) gainfully employed in Your regular occupation on a partial and/or part-time basis.

The policy provides that an insured employee such as appellant is entitled to benefits for his partial disability as follows:

Partial Disability Benefits will cease on the earliest of the following (1) the date the Insured Employee's *earnings* from such employment equals or exceeds 100% of his *pre-Disability Salary;* or (2) at the end of the Maximum Period Payable.

The policy defines Salary as follows:

"Salary" means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes commissions, overtime earnings, incentive pay, bonuses, or other compensation.

The policy does not define earnings.

The policy also makes provisions if an employee's partial or total disability recurs:

If Disability for which benefits were payable ends but recurs due to the same or related causes less than six months after the end of the prior Disability, it will be considered a resumption of the prior disability. Such recurrent Disability shall be subject to the provisions of this policy that were in effect at the time the prior Disability began.

Disability which recurs more than six months after the end of a prior Disability shall be subject to: (1) a new Elimination period; (2) a new Maximum Period Payable; and (3) the other provisions of this policy that are in effect on the date the Disability recurs.

Disability must recur while the Insured Employee's coverage is in force under this policy.

.    .    .    .    .

Termination will not affect a covered loss which began before the date of termination.

### B. *Appellant's Injury and Work History.*

Appellant was employed by CCL as a salesman, with a monthly salary of $3,167, and maintained long-term disability insurance through the policy provided by appellee. On March 2, 1989, appellant was injured in an automobile accident during the course and scope of his employment. On August 28, 1989, appellant reported to CCL that he needed to take a leave of absence from work because of his medical condition. On Sep-

tember 6, 1989, CCL delivered a letter to appellant, informing him that the company decided to terminate his employment, effective September 20, 1989. On September 13, 1989, appellant was examined by his doctor who declared him totally disabled and advised appellant to stop working immediately.

CCL informed appellee of appellant's claim for long-term disability benefits on September 25, 1990. Appellee subsequently denied appellant's claim for long-term disability benefits because it believed that appellant was terminated from his employment on September 7, 1989, six days before he made a claim for disability benefits. Appellant administratively appealed this decision, maintaining that he was still working at CCL as of the date of his disability and was still disabled within the meaning of the terms of the policy.

In the interim, on March 1, 1991, following one-and-a-half years of unemployment due to his disability, appellant began working at Custom Printed Labs, where he remained employed for five months, until July 31, 1991. Appellant had a monthly income of $3500 while employed at Custom Printed Labs. Custom Printed Labs terminated its employment relationship with appellant because his disability precluded him from performing the necessary tasks of his job. Appellant had at least three other periods of employment following his job at Custom Printed Labs; he claims that each ended because his injuries precluded him from fulfilling his job responsibilities.

### C. *Legal Proceedings.*

Appellant brought suit against appellee in Arizona Superior Court pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") to recover long-term disability benefits under the terms of appellee's insurance policy ("insurance policy" or "policy"). Appellee properly removed the suit to the District Court for the District of Arizona.

Appellee moved for summary judgment, again alleging that appellant was terminated before the onset of his disability. The district court disagreed, denied appellee's motion for summary judgment and the case

proceeded to trial. Following a bench-trial, the district court ruled that appellant was totally disabled as of September 13, 1989, and awarded him benefits through March 1, 1991, the date he began working at Custom Printed Labs. The Court concluded that appellant was no longer disabled after he began his employment at Custom Printed Labs because his earnings at his new employment exceeded his pre-disability Salary, thereby triggering the termination of the benefits provision of the policy.

## II.

### STANDARD OF REVIEW

■ We review a denial of benefits under an ERISA plan de novo, *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989),[1] and mixed questions of law and fact, including whether appellant was totally disabled, for clear error, *see United States v. McConney,* 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc), *abrogated on other grounds by Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Wilcott v. Matlack, Inc.,* 64 F.3d 1458, 1460 (10th Cir. 1995).

## III.

### DISCUSSION

A. *Appellant's Claims Under the Insurance Policy.*

1. *The definitions of "earnings" and "salary" under the policy.*

Appellant's first argument concerns the definition of the term "earnings" as it is used in the Partial Disability Benefits provision of the insurance policy. It is undisputed that appellant's monthly salary at CCL was $3,167; according to the district court, his monthly earnings at Custom Printed Labs exceeded $3,500. Appellant contends that the district court calculated his earnings at Custom Print Labs incorrectly. He maintains that his earnings, properly calculated, are less than his pre-Disability Salary at

CCL, and therefore he was entitled to partial disability benefits from appellee.

Appellant argues that because the term "earnings" is not defined in the policy it is ambiguous and one reasonable interpretation of that term encompasses a sum less than "salary." We hold, however, that the plain, ordinary meaning of the term "earnings" does not reasonably support appellant's position.

The challenged policy provision, to repeat, reads as follows:

> Partial Disability Benefits will cease on the earliest of the following (1) the date the Insured Employee's *earnings* from such employment equals or exceeds 100% of his *pre-Disability Salary;* or (2) at the end of the Maximum Period Payable.

The policy defines Salary as follows:

> "Salary" means the monthly wage or salary that the Insured Employee was receiving from the Employer on the date the Disability began. It excludes commissions, overtime earnings, incentive pay, bonuses, or other compensation.

Again, the policy does not define earnings.

Appellant argues that one possible definition of the term "earnings" is a sum less than "Salary" as defined by the policy. He contends that it is reasonable to interpret "earnings" as representing "Salary" minus any expenses appellant had to incur out-of-pocket or benefits that his new employer, Custom Printed Labs, did not provide him. For example, at Custom Printed Labs appellant was required to pay for automobile-related expenses, did not receive an expense account and was required to pay his own life and health insurance benefits. He maintains that his "earnings" should have been calculated by subtracting those expenses from his salary. According to appellant, his earnings, when properly reduced, represent a sum far less than what his salary was at CCL and, therefore, he is entitled to partial disability benefits for the time he was employed at Custom Printed Labs until he began "earn-

---

**1.** None of the exceptions to de novo review set forth in *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956, 103 L.Ed.2d 80, apply in this case.

ing" more than his CCL pre-Disability Salary.

■ Federal law governs the interpretation of ERISA insurance policies. *See Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995). We may also examine state law to guide our decision making process if state law is consistent with the goals and objectives of ERISA. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir.1985). In our interpretation of an ERISA contract such as this one, we will assign meaning to the terms "in an ordinary and popular sense as would a [person] of average intelligence and experience," *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990) (alteration in original), and will not "artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Babikian*, 63 F.3d at 840 (internal quotation marks and citation omitted). Only where a term is subject to two reasonable competing definitions will we apply the *contra proferentum* doctrine and interpret that term against the insurer. *See id.*

■ We conclude that, under this rubric, appellant's interpretation is not reasonable. For example, Black's Law Dictionary defines earnings as follows: "Earnings generally include, *but are not limited to:* salaries and wages, interest and dividends, and income from self-employment. Term is broader in meaning than 'wages'." [2] Black's Law Dictionary 509 (6th ed.1990) (emphasis added); *see also Fitch v. Pacific Fidelity Life Ins. Co.*, 54 Cal.App.3d 140, 126 Cal.Rptr. 445, 449 (Cal.Ct.App.1975) (stating, in analyzing a statute, that "the use of 'wages and salaries' as opposed to more comprehensive terms such as 'earnings' or 'income' suggests" a lesser amount). In addition, appellant fails to explain why the term "earnings" should not include that which was excluded under the policy from his Salary (i.e., commissions, overtime earnings, incentive pay, bonuses, or other compensation).

We hold that it is clear in this case that the term "earnings" encompasses an amount greater than, not less than, appellant's "Salary" as defined by the policy. Appellant fails to provide any authority to support his strained interpretation of the term "earnings." We therefore affirm the district court's interpretation of the challenged policy provision and hold that appellant's earnings at Custom Printed Labs are greater than his Salary at CCL.

■ Alternatively, appellee contended that because appellant began working full-time at Custom Printed Labs on March 1, 1991, he is not entitled to benefits under the policy as of that date. We agree. Under the policy, appellant is disabled and therefore entitled to insurance benefits *only* if he is "continuously unable to perform the substantial and material duties of his regular occupation." The district court concluded that appellant was able to perform the substantial and material duties of his regular occupation beginning March 1, 1991—the date he began working full-time at Custom Printed Labs. Appellant did not present *any* evidence, in his briefing or at oral argument, to dispute that conclusion. We are likewise unable to find any evidence in the record or an interpretation of the policy that would warrant disturbing this conclusion of law. Because we find that appellant was no longer disabled as of March 1, 1991, it follows that he was not entitled to disability benefits as of that date.

2. *The recurrent disability provision of the policy.*

■ Appellant also argues that under the terms of the policy he is entitled to recurrent disability benefits after being fired from his job at Custom Printed Labs. To briefly summarize: after appellant was fired from his employment at CCL, he remained unemployed due to his disability until March 1, 1991, at which time he took a job at Custom Printed Labs. He was fired from Custom Printed Labs on July 31, 1991. Appellant contends that appellee's insurance policy covered his disability even following his loss of employment from Custom Printed Labs. The clear language of the policy, however, suggests otherwise.

---

**2.** Black's defines "wages" as "including salary."

Black's Law Dictionary 1579.

The relevant policy provision, to repeat, reads as follows:

> If Disability for which benefits were payable ends but recurs due to the same or related causes less than six months after the end of the prior Disability, it will be considered a resumption of the prior disability. Such recurrent Disability shall be subject to the provisions of this policy that were in effect at the time the prior Disability began.
>
> Disability which recurs more than six months after the end of a prior Disability shall be subject to: (1) a new Elimination period; (2) a new Maximum Period Payable; and (3) the other provisions of this policy that are in effect on the date the Disability recurs.
>
> Disability must recur while the Insured Employee's coverage is in force under this policy.
>
> .    .    .    .    .
>
> Termination will not affect a covered loss which began before the date of termination.

Appellant argues that the phrase: "Termination will not affect a covered loss which began before the date of termination" includes termination from *any* employment, not just employment at CCL. This argument, rejected by the district court, is wholly unsupported by the language of the policy.

Under the provision entitled "Recurrent Disability Benefits," the policy clearly states that the "Disability *must* recur while the Insured Employee's coverage *is in force* under this policy." The policy, to repeat, provides that coverage terminates when an employee's earnings exceed his pre-disability salary.

As discussed above, appellant's coverage ended when he began his employment relationship with Custom Printed Labs (i.e., when his earnings exceeded his pre-Disability Salary). Therefore, the policy was no longer "in force" and the "Recurrent Disability Benefits" provision of the policy does not apply to appellant. To interpret the policy as appellant does renders the provision "Disability must recur while the Insured employee's coverage is in force under this policy" completely superfluous. In addition, it seems unlikely at best that appellee would draft an insurance policy that covered an employee even though (1) his disability ended, thereby allowing him (2) to become employed full-time at a location other than the one through which the employee received his insurance in the first place.

Although we will interpret ambiguous policies against the insurer, *see Babikian*, 63 F.3d at 840, in this case the policy is very clear. Thus, the doctrine of contra proferentum does not apply.

## B. The District Court's Finding that Appellant was Totally Disabled Until March 1991.

Appellee contends in the cross-appeal that the district court erred in finding that appellant was totally disabled within the meaning of the insurance policy until March 1, 1991. Appellee argues that there is insufficient evidence to demonstrate that appellant's disability persisted beyond March 1, 1990.

Appellee argues that the district court's finding that appellant was totally disabled within the meaning of the policy is a mixed question of law and fact subject to a de novo review. If we conclude, however, that a review of the district court's finding that appellant was totally disabled is subject to only a review for clear error, appellee readily concedes that the decision of the district court should be affirmed.

Under the law of this and other circuits, a district court's determination of whether an individual is totally disabled within the meaning of an ERISA policy is essentially a factual question, subject to a "clearly erroneous" standard of review. *See McConney*, 728 F.2d at 1200–01. This precise issue confronted the Tenth Circuit in *Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1460–61 (10th Cir.1995). In *Wilcott*, the insurance carrier appealed a district court conclusion that an employee was "totally disabled" within the meaning of his ERISA policy. The carrier contended that the district court finding involved the construction of an ERISA plan, and as a result, was a legal conclusion subject to a de novo review by the court of appeals. *See id.* at 1460–61. The court disagreed, concluding that "[t]he dispositive issue is 'not really the interpretation of the [ERISA plan], but rather a question of fact:

whether [plaintiff] was totally and permanently disabled from any kind of work.'" *Id.* at 1460–61 (alteration in original) (quoting *Delaney v. Union Carbide Corp.*, 749 F.2d 17, 19 (8th Cir.1984) and citing *Kirwan v. Marriott Corp.*, 10 F.3d 784, 790 (11th Cir. 1994)).

■■■ This conclusion is consistent with principles of law articulated by this Court. Of course, questions of fact are subject to "the deferential, clearly erroneous standard, and questions of law [are subject to] ... the non-deferential, de novo standard." *Lads Trucking Co. v. Board of Trustees of the Western Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1373 (9th Cir. 1985). More importantly, "mixed questions of law and fact in which the applicable legal standard provides for a strict factual test subjects the lower court to clearly erroneous review." *Id.* (citing *McConney*, 728 F.2d at 1200–01).

■■■ In this case, the insurance policy provides a strict factual test for whether an individual is totally disabled, and therefore, the determination of the district court should be subject to a review for clear error. The district court below was required to make a determination of whether appellant was (1) "continuously unable to perform the substantial and material duties of his regular occupation," (2) "under the regular care" of a physician and (3) not gainfully employed. These are *all* questions of fact. Because appellee concedes that it cannot prevail under a clearly erroneous review of the record and there is evidence in the record that supports the district court's finding that appellant was disabled until March 1991 when he began working at Custom Printed Labs, we will not disturb that finding. *See McConney*, 728 F.2d at 1200–01.

## IV.

### CONCLUSION

For the forgoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**