**Kathleen M. O'BRIEN**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY.**

**Civil Action No. 11–1838.**

United States District Court,
E.D. Louisiana.

June 7, 2012.

---

James Frederick Willeford, Jessica Michelle Vasquez, Reagan Levert Toledano, Willeford Law Firm, New Orleans, LA, for Kathleen M. O'Brien.

Robert Louis Walsh, Sara C. Valentine, Jones Walker, New Orleans, LA, for Hartford Life and Accident Insurance Company.

## ORDER AND REASONS

CARL J. BARBIER, District Court.

This matter is before the Court on the parties' cross-motions for judgment on the administrative record (**Rec. Docs. 18, 21**). Each party opposes the other's motion, and the motions are before the Court on supporting memoranda and without oral argument.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This civil action is a claim for additional disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiff Kathleen O'Brien worked as a traveling nurse for American Nursing Services, Inc., and is a participant in and a beneficiary of a Group Short–Term Disability, Long–Term Disability, Supplemental Dependant Life, and Supplemental Term Life Plan ("the Plan") created and sponsored by her former employer.[1] American Nursing Services provided dis-

---

1. As an aside, the parties report that American Nursing Services, Inc. is currently in bankruptcy proceedings.

ability benefits to Plan participants through a group disability policy issued by Defendant Hartford Life & Accident Insurance Company ("Hartford").

Under the terms of Hartford's policy, short-term and long-term disability benefits are payable only if the insured becomes "Disabled from a covered injury, Sickness, or pregnancy."[2] The short-term disability benefit provided under the policy is a weekly benefit comprised of "[t]he lesser of: 1) 65% of Your Pre-disability Earnings; or 2) $2,000, reduced by Other Income Benefits."[3]

The term "Pre-disability Earnings" is defined under the policy's short-term disability benefits section as "[the insured's] regular weekly rate of pay, not counting bonuses, commissions, tips and tokens, overtime pay or any other fringe benefits or extra compensation in effect on the date" the insured was actively at work before becoming disabled.[4] The long-term disability benefit provided under the policy is also calculated with respect to the insured's Pre-disability Earnings. The monthly long-term disability benefit is calculated by multiplying the insured's Pre-disability Earnings by a set "Benefit Percentage," which, in this case, is 65%, up to a maximum monthly benefit of $5,000.[5] The long-term disability benefit section employs a substantially similar definition of the term "Pre-disability Earnings," stating: "Pre-disability Earnings means Your regular monthly rate of pay, not counting bonuses, commissions and tips and tokens, overtime pay or any other fringe benefits

or extra compensation in effect on the last day You were Actively at Work before You became Disabled."[6]

Plaintiff filed a claim for disability benefits with Hartford after experiencing severe headaches that precluded her from continuing to work as a full-time registered nurse. After reviewing her claim, Hartford determined that Plaintiff was disabled under the terms of the policy and began paying her short-term disability benefits, based upon Plaintiff's $20/hour wage, for a total weekly rate of pay of $800.[7] On March 12, 2009, Plaintiff notified Hartford that its information regarding her income was incorrect, in that her regular weekly income was $1,682, rather than $800.[8] Hartford responded that it would need to verify this information with American Nursing Services before taking any action. On March 16, 2009, American Nursing Services notified Hartford that Plaintiff's weekly income was $1,682, rather than $800, and as a result, Hartford adjusted the short-term disability benefit to reflect the Pre–Disability Earnings Plaintiff reported, rather than the $800 initially determined.[9] Later, on August 11, 2009, Hartford approved and began paying Plaintiff long-term disability benefits based upon the $1,682 weekly income figure that Plaintiff had reported.[10]

Subsequently, during a periodic review of benefits, Hartford requested and reviewed Plaintiff's 2009 tax returns, at which point it reportedly discovered that Plaintiff's weekly taxable rate of pay was $770.38, and not $1,682.[11] Based upon this

**2.** Rec. Doc. 21–4, Hartford–O'Brien–0013; Hartford–O'Brien–0031.

**3.** Rec. Doc. 21–4, Hartford–O'Brien–0013.

**4.** Rec. Doc. 21–4, Hartford–O'Brien–0023.

**5.** Rec. Doc. 21–4, Hartford–O'Brien–0031.

**6.** Rec. Doc. 21–4, Hartford–O'Brien–0045.

**7.** Rec. Doc. 21–7, Hartford–O'Brien–0467.

**8.** Rec. Doc. 21–8, Hartford–O'Brien–0470.

**9.** Rec. Doc. 21–7, Hartford–O'Brien–0447.

**10.** Rec. Doc. 21–7, Hartford–O'Brien–0447.

**11.** Rec. Doc. 21–7, Hartford–O'Brien–0452–0466.

information, on December 20, 2010, Hartford reduced Plaintiff's long-term disability benefits in accordance with a weekly rate of pay of $770.38 and notified Plaintiff of its decision and its intention to seek reimbursement for the overpayment of both long-term and short-term disability payments.[12]

Plaintiff promptly challenged Hartford's decision through an administrative appeal, arguing that her "Pre-disability Earnings" included a weekly *per diem* payment of $882, which included $280 per week for meals and other incidentals and $602 per week for housing.[13] In support of her appeal, Plaintiff also submitted additional documentation for Hartford's consideration, including her American Nursing Services Travel Employment Agreement and Travel Assignment Pricing Spreadsheet.[14] On June 23, 2011, Hartford denied the appeal based on its determination that the fixed weekly *per diem* Plaintiff received from her employer should not be included in the calculation of her "Pre-disability Earnings" because it amounted to a "fringe benefit" or "extra compensation," rather than her "regular weekly rate of pay." [15] Plaintiff subsequently requested further review of Hartford's determination, but the request was denied.[16]

Having exhausted her administrative appeals, Plaintiff initiated this action in federal court, seeking payment of benefits under the policy, along with prejudgment interest, attorney's fees, and costs.[17] Hartford then filed an Answer and Counterclaim, seeking to recover $40,313.36 in improperly paid benefits based on the allegedly inflated rate of pay Plaintiff reported.[18] The administrative record has now been filed, and the parties have filed cross-motions for judgment on the administrative record.

## PARTIES' ARGUMENTS

In her motion, Plaintiff argues that her $882 *per diem* allowance was part of her regular monthly rate of pay, rather than a "fringe benefit" or form of "extra compensation," contrary to Hartford's determination. She reports that this payment was regularly made with *each* pay check she received from her employer, and not as an additional or irregular form of compensation. She also points out that this payment was made regardless of whether she actually incurred any expenses for lodging, meals, or any other incidental costs, and in exchange she waived her right to seek reimbursement for any other business expenses incurred in connection with her employment with American Nursing Services. She further notes that Hartford was operating under a structural conflict of interest, because it both evaluates and pays claims. In sum, because the administrative record shows that her *per diem* was a component of her regular rate of pay, Plaintiff submits that Hartford's determination that it was a "fringe benefit" or "extra compensation" was arbitrary and capricious.

---

12. Rec. Doc. 21–4, Hartford–O'Brien–0467–0469; Rec. Doc. 21–5, Hartford–O'Brien–0470–0472.

13. Rec. Doc. 21–6, Hartford–O'Brien–0344–0349; Rec. Doc. 21–7, Hartford–O'Brien–0379–0384; Rec. Doc. 21–8, Hartford–O'Brien–0535–0536.

14. Rec. Doc. 21–7, Hartford–O'Brien–0447–0448.

15. Rec. Doc. 21–7, Hartford–O'Brien–0446–0451.

16. *See* Rec. Doc. 18–7.

17. Complaint, Rec. Doc. 1.

18. Answer and Counterclaim, Rec. Doc. 4.

Plaintiff additionally contends that Hartford's reliance on the Internal Revenue Service ("IRS")'s "Taxable Fringe Benefits Guide" to determine whether her *per diem* constituted a "fringe benefit" within the meaning of the policy is further evidence that its determination was arbitrary and capricious. She maintains that the very fact that Hartford relied upon a document that is not referenced in the policy in order to deny her benefits is strong evidence that it abused its discretion. She contends that the tax treatment of her *per diem* allowance is fundamentally irrelevant in determining whether such income constitutes a "fringe benefit" under the terms of the policy. Furthermore, according to Plaintiff's reading of the IRS's Fringe Benefits Guide, an employee must actually *incur* expenses in order for a *per diem* reimbursement to constitute a "fringe benefit," while here, she received the *per diem* regardless of whether any expenses were incurred. In the alternative, because neither "fringe benefit" nor "extra compensation" are defined in the policy, at a minimum, Plaintiff urges the Court to find the terms ambiguous and thus to apply the doctrine of *contra proferentum*, resolving this ambiguity against Hartford.

Finally, Plaintiff argues that Hartford is estopped from reducing the disability benefits due under the policy pursuant to the "ERISA estoppel doctrine" adopted by the Fifth Circuit in *Mello v. Sara Lee Corp.,* 431 F.3d 440 (5th Cir.2005). Under *Mello,* a party seeking to apply the ERISA estoppel doctrine must establish (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the misrepresentation; and (3) extraordinary circumstances. *See id.* at 444. Here, Plaintiff points out that Hartford regularly accepted premiums based upon a regular rate of pay that included the amount of the *per diem* pay-ment without ever advising her that this calculation may be incorrect. Plaintiff avers that she reasonably relied upon this representation to her detriment by failing to obtain additional disability insurance, and that this constitutes an extraordinary circumstance. Accordingly, Plaintiff submits that Hartford is estopped from now asserting that the fixed *per diem* payments should be excluded in computing her regular rate of pay. Based on the foregoing, Plaintiff requests that the Court grant judgment in her favor and against Hartford, awarding her increased benefits of $4,737.64 per month retroactive to August 11, 2009, as well as attorney's fees, costs, and prejudgment interest.

In opposition to Plaintiff's motion, and in support of its own motion, Hartford argues that Plaintiff has not shown that its determination that her *per diem* allowance is not properly included in her Pre-disability Earnings was arbitrary and capricious. To the contrary, Hartford argues that its determination was both reasonable and based upon a rational connection to the evidence contained in the administrative record. In considering whether Plaintiff's *per diem* payments were included as Pre-disability Earnings, Hartford acknowledges that it relied on the IRS's Taxable Fringe Benefit Guide, and despite Plaintiff's contentions to the contrary, it maintains that it was within its discretion to consult this guide in reaching its determination. The IRS defines the term "fringe benefit" as a "form of pay (including property, services, cash, or cash equivalent) in addition to the stated pay for the performance of services."[19] Hartford points out that the IRS recognizes *"Per Diem* Reimbursements" as a non-taxable fringe benefit.[20] According to the IRS, a *"Per Diem* Reimbursement" is "an allowance per day for lodging, meal and incidental expenses

---

19. Rec. Doc. 21–13, Hartford–O'Brien–1013.

20. *See* Rec. Doc. 21–13, Hartford–O'Brien–1040.

while traveling on business" and may be deemed substantiated without providing receipts.[21] Because the *per diem* allowance Plaintiff received fits squarely within the IRS's definition of a *"Per Diem* Reimbursement" fringe benefit, Hartford submits that its decision not to include it as part of her Pre-disability Earnings was not arbitrary and capricious.

Next, addressing Plaintiff's alternative argument, Hartford argues that Plaintiff has provided insufficient evidentiary support to make out an ERISA estoppel claim, arguing that she has failed to prove even one of the three essential elements cited above. Hartford submits that Plaintiff has not set forth what material misrepresentation it is alleged to have made, any facts showing that she reasonably or detrimentally relied on such misrepresentation, or any extraordinary circumstances that would justify applying the doctrine in the instant case. As such, it urges the Court to decline to apply the ERISA estoppel doctrine. In conclusion, Hartford requests that the Court deny Plaintiff's motion and instead grant judgment in its favor on its counterclaim for $40,313.36 in overpaid long-term benefits and $13,680.74 in overpaid short-term benefits.

In reply, Plaintiff responds that she has proved every essential element of her ERISA estoppel claim. She argues that the administrative record conclusively shows that Hartford made a material misrepresentation when it accepted her stated regular rate of pay that included the *per diem* allowance without ever notifying her that this calculation was incorrect, and that she reasonably relied on this representation to her detriment in failing to obtain alternative or additional disability insurance. She submits that this must constitute an "extraordinary circumstance" unless it is Hartford's regular practice to inaccurately determine premiums. As such, even if Hartford's determination was not arbitrary and capricious, Plaintiff maintains that the ERISA estoppel doctrine should be applied under the facts presented.

## LEGAL STANDARD

■ ERISA provides federal courts with jurisdiction to review determinations made under employee benefit plans. *See* 29 U.S.C. § 1132(a)(1)(B). It is undisputed that the policy at issue in the instant case is governed by ERISA. The Fifth Circuit has recognized that the administrator of an ERISA employee benefit plan must generally make two types of determinations in deciding whether a claimant is entitled to benefits under the plan. *See Schadler v. Anthem Life Ins. Co.,* 147 F.3d 388, 394 (5th Cir.1998) (citing *Pierre v. Conn. Gen. Life Ins. Co.,* 932 F.2d 1552, 1557 (5th Cir.1991)). First, it must determine the facts underlying the claim. *Id.* (citing *Pierre,* 932 F.2d at 1562). Second, the administrator must decide whether the facts determined give rise to a valid claim under the terms of the plan. *Id.*

■ Generally, an administrator's determination regarding a claimant's eligibility for benefits or plan terms is subject to *de novo* review by a federal district court. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, where the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, as the policy does here,[22] the district

---

21. Rec. Doc. 21–13, Hartford–O'Brien–1040.

22. *See* Rec. Doc. 21–4, Hartford–O'Brien–0021; 0042 (**"Policy Interpretation:** *Who interprets the terms and conditions of The Policy?* We have full discretion and authority to

determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy. This provision applies where the interpretation of The Policy is governed by the Employee Retirement Income Security Act of

court's role is to determine whether the administrator abused its discretion in denying the claim. *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir.2009). The administrator's factual determinations are also reviewed for abuse of discretion, regardless of whether discretionary authority is granted under the plan. *Vercher v. Alexander & Alexander, Inc.,* 379 F.3d 222, 225 (5th Cir.2004).

 In *Ellis v. Liberty Life Assurance Co. of Boston,* 394 F.3d 262, 269–70 (5th Cir.2004), the Fifth Circuit outlined a two-step process for reviewing an administrator's interpretation and application of an ERISA plan for abuse of discretion. First, a court should determine whether the administrator's determination was legally correct. If it was, then no abuse of discretion is possible, and the inquiry ends. *Id.* at 270. If the administrator's determination was *not* legally correct, however, then the court must review whether the decision was an abuse of discretion. *Id.* However, a court is not ultimately required to confine itself to this two-step analysis. The first step may be bypassed if the Court can more readily determine whether the administrator has abused its discretion. *See Holland,* 576 F.3d at 246 n. 2. Here, because resolution of the present case is more easily reached under the abuse of discretion standard, the Court's analysis will proceed directly to the second step of this inquiry.

 Under the abuse of discretion standard, a court must decide whether the administrator's determination was arbitrary and capricious. *Anderson v. Cytec Indus., Inc.,* 619 F.3d 505, 512 (5th Cir. 2010). A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence. *Holland,* 576 F.3d at 246; *see also Lain v.*

*UNUM Life Ins. Co.,* 279 F.3d 337, 342 (5th Cir.2002) ("A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial.").

 Additionally, the plan administrator's decision to deny benefits must be supported by substantial evidence. *Ellis,* 394 F.3d at 273. Substantial evidence "is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Corry v. Liberty Life Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir.2007). Ultimately, the court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Id.* (quoting *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 297 (5th Cir.1999)).

 Finally, when the same entity that maintains discretionary control over disability determinations is also the entity that must pay any disability benefits, a court must account for this structural conflict of interest. In such circumstances, courts employ a "sliding scale" standard of review, under which less deference is given to the administrator's determination in proportion to the evidence of conflict. *Ellis,* 394 F.3d at 269–70. In short, the standard of review remains abuse of discretion, but the existence of a conflict of interest is a factor that should be considered in determining whether the administrator abused its discretion. Here, the parties do not dispute that a structural conflict of interest exists, as Hartford admittedly acts as both insurer and administrator of the Plan at issue. However, because Plaintiff has introduced no additional

1974, as amended [ERISA].") (emphasis in original).

evidence other than to point out the existence of this structural conflict, the Court will review Hartford's determinations with "only a modicum less deference" than it otherwise would. *Vega,* 188 F.3d at 301.

## DISCUSSION

As previously noted, disability benefits are paid as a percentage of "Pre-disability Earnings," which is defined as the insured's "regular weekly rate of pay" for short-term disability benefits and "regular monthly rate of pay" for long-term disability benefits.[23] However, "bonuses, commissions, tips and tokens, overtime pay or any other fringe benefits or extra compensation" are not included as Pre-disability Earnings.[24] Applying the above principles to the facts of this case, then, the issue before the Court is whether Hartford abused its discretion when it determined that Plaintiff's *per diem* allowance for lodging, meals, and other incidental expenses constituted a "fringe benefit" or "extra compensation" rather than an element of her "regular rate of pay."

### A. Was Hartford's Determination Arbitrary and Capricious?

■ It is undisputed that the terms "pay," "fringe benefit," and "extra compensation" are not defined in the policy. Accordingly, these terms should be interpreted in accordance with their "ordinary and popular" meanings. *Crowell v. Shell Oil Co.,* 541 F.3d 295, 314 (5th Cir.2008) (citations omitted). Here, the administrative record shows that Hartford consulted the

IRS's Taxable Fringe Benefit Guide in interpreting the term "fringe benefit."[25] According to the IRS, a fringe benefit is a "form of pay (including property, services, cash, or cash equivalent) in addition to the stated pay for the performance of services."[26] Plaintiff's *per diem* allowance easily falls within the scope of this definition. Furthermore, as Hartford points out, under the IRS's guide, a *"Per Diem* Reimbursement," which is defined as a periodic allowance "to pay for [an employee's] lodging, meal and incidental expenses while traveling on business," is recognized as a "fringe benefit."[27] The IRS also explicitly notes that a *per diem* reimbursement can be deemed substantiated without requiring the employee to provide specific proof that expenses were actually incurred, as was the case with Plaintiff's *per diem* allowance, which lends additional support to Hartford's findings.[28]

Plaintiff responds by arguing that the "tax treatment" of her *per diem* allowance "is neither material nor relevant" in determining how it should be classified under the terms of the policy, noting that the policy references neither federal tax regulations nor IRS definitions.[29] Even assuming that the precise tax classification of the *per diem* payments at issue here is irrelevant, as Plaintiff suggests, the Court nonetheless finds that the IRS's definition of the term "fringe benefit" comports with common and ordinary definitions of the term "fringe benefit," including definitions drawn from sources cited in Plaintiff's own

---

23. Rec. Doc. 21–4, Hartford–O'Brien–0023; Hartford–O'Brien–0045.

24. *See* Rec. Doc. 21–4, Hartford–O'Brien–0023; Hartford–O'Brien–0045.

25. *See* Rec. Doc. 21–7, Hartford–O'Brien–0446; Hartford–O'Brien–0448–0449.

26. Rec. Doc. 21–13, Hartford–O'Brien–1013.

27. Rec. Doc. 21–13, Hartford–O'Brien–1040.

28. Rec. Doc. 21–13, Hartford–O'Brien–1040 ("The amount of the expenses reimbursed under a *per diem* allowance method will be deemed substantiated without receipts, provided the requirements of the regulations are met.").

29. Plaintiff's Memorandum in Support, Rec. Doc. 18–1, p. 8.

memoranda. *See, e.g.,* BLACK'S LAW DICTIO-NARY 178 (9th ed. 2009) (defining "fringe benefit" as "[a] benefit (other than direct salary or compensation) received by an employee from an employer, such as insurance, a company car, or a tuition allowance"); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 467 (10th ed. 1999) (defining "fringe benefit" as "an employment benefit (as a pension or a paid holiday) granted by an employer that has a monetary value but does not affect basic wage rates"); Merriam–Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/fringe%20benefit (last visited June 1, 2012) (defining "fringe benefit" as "an employment benefit ... granted by an employer that has a monetary value but does not affect basic wage rates"). The term "pay," in contrast, usually refers to the stated base salary or hourly wage that an employee is paid in exchange for the performance of her regular duties, as opposed to any additional form of compensation that an employer may offer. *See, e.g.,* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 467 (10th ed. 1999) (defining "pay" as "something paid for a purpose, and especially *as a salary or wage")* (emphasis added); Merriam–Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/pay?show=1&t= 1338750723 (last visited June 1, 2012) (same definition).

Here, the evidence in the administrative record clearly supports Hartford's conclusion that Plaintiff's *per diem* allowance was a "fringe benefit" rather than an element of her "regular rate of pay," in accordance with the common meaning of these terms.[30] The various employment documents submitted in support of Plaintiff's administrative appeal show that Plaintiff received a "base pay rate" of $20 per hour as compensation for the performance of her job duties as a traveling nurse.[31] The $126 daily allowance Plaintiff received for "travel and living expenses" was clearly not included as part of her "base pay rate," and was instead intended to reimburse her for the additional costs she would incur as a result of her position as a traveling nurse.[32] This is further confirmed by the fact that Plaintiff was not permitted to seek additional reimbursement from her employer for the costs of lodging or meals during her assignments, because she was already receiving the allowance to compensate her for these expenses.[33] Based on this evidence, Hartford's determination that Plaintiff's *per diem* allowance was not included in her "regular monthly rate of pay" was reasonable.

---

**30.** Because the Court finds no ambiguity in the meaning of the terms "fringe benefit" or "pay," and because Hartford's interpretation of the policy is in line with these terms' ordinary and popular meanings, it would be inappropriate to apply the doctrine of *contra proferentum* under these circumstances. *See Wegner v. Standard Ins. Co.,* 129 F.3d 814, 818–19 (5th Cir.1997) ("Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured."). Moreover, the Fifth Circuit has held that the doctrine of *contra proferentum* is inapplicable where an administrator has been granted "interpretive discre-

tion" to construe ambiguous terms in an ERISA plan, as Hartford has here. *See High v. E–Systems, Inc.,* 459 F.3d 573, 579 (5th Cir.2006).

**31.** Rec. Doc. 21–7, Hartford–O'Brien–0438.

**32.** Rec. Doc. 21–7, Hartford–O'Brien–0438.

**33.** Rec. Doc. 21–7, Hartford–O'Brien–0436 ("If you are receiving an allowance for Lodging or for Meals and Incidental Expenses on specific days during your contracts, you cannot receive reimbursement for costs which fall under these categories on those ... days.").

The Court is not persuaded by Plaintiff's argument that the *per diem* could only be properly classified as part of her "earnings" because it was regularly paid without verification that any expenses were actually incurred. Notably, Plaintiff never included the allowance as part of her regular taxable income on her tax returns.[34] *See Bullock v. USF Group Benefits Plan,* No. 06–182, 2008 WL 2965724, at *4–5 (E.D.Tenn. July 30, 2008) (finding no abuse of discretion in administrator's conclusion that employee's *per diem* payment was not part of his "earnings" and noting that plaintiff had never paid income tax on the *per diem*). Accordingly, because the administrative record indicates that both Plaintiff and her employer did not consider the *per diem* allowance to be a part of her "regular rate of pay" at the time she was working, it was eminently reasonable for Hartford to have reached a similar conclusion when reviewing her claim for benefits.[35]

A number of the cases Plaintiff cites in her memorandum are inapplicable to the case at hand, in that they involve interpretation of the terms "wages" and "fringe benefits" as those terms are used in the Longshore and Harbor Workers' Compensation Act, rather than in an employee benefit plan governed by ERISA. *See, e.g., James J. Flanagan Stevedores, Inc. v. Gallagher,* 219 F.3d 426, 432 (5th Cir. 2000); *Universal Mar. Serv. Corp. v.*

*Wright,* 155 F.3d 311, 320 (4th Cir.1998); *B & D Contracting v. Pearley,* 548 F.3d 338, 342 (5th Cir.2008); *Custom Ship Interiors v. Roberts,* 300 F.3d 510 (4th Cir. 2002). Of the cases that are at least topically relevant, none undermines the Court's conclusion regarding the reasonableness of Hartford's determination. *See Abraham v. Exxon Corp.,* 85 F.3d 1126, 1131 (5th Cir.1996) (holding that Treasury regulations do not authorize a district court to rewrite the terms of an ERISA plan to include "leased employees" as plan participants, where employer had designed the plan to exclude them); *Keszenheimer v. Reliance Standard Life Ins. Co.,* 402 F.3d 504, 508–10 (5th Cir.2005) (holding that district court erred in concluding that employee's *per diem* and automobile allowance were part of his "monthly salary" rather than "overtime pay, bonuses or any other special compensation," even though these payments were "expected," "usual," and "guaranteed"); *Wegner,* 129 F.3d at 818 (holding that employee's $300 per day salary was not "overtime" under the terms of the policy simply because he worked more than eight hours per day, and further finding that his salary did not constitute "other extra compensation" because the salary was a fixed, non-variable amount of compensation, and thus was not "extra" in any way).[36]

In sum, having considered the administrative record, the Court cannot hold that

---

**34.** *See* Rec. Doc. 21–7, Hartford–O'Brien–0452–0466.

**35.** Because the Court finds reasonable Hartford's determination that the *per diem* allowance was a "fringe benefit," it need not address the issue of whether it constitutes "extra compensation," as well.

**36.** In another case cited by Plaintiff, *Deegan v. Continental Casualty Co.,* 167 F.3d 502, 507 (9th Cir.1999), the Ninth Circuit rejected the administrator's proffered interpretation of the term "earnings" as meaning a sum less than

the insured employee's "salary." There, the court found the administrator's interpretation unreasonably restrictive in light of the fact that the term "earnings" was not defined in the policy. Here, in contrast, the policy does define the term and defines it in reference to the employee's "regular rate of pay." Accordingly, *Deegan* is inapposite. *See Keszenheimer,* 402 F.3d at 509 n. 19 (distinguishing *Deegan* because policy at issue explicitly defined disability benefits calculation according to employee's "monthly salary," rather than by reference to an undefined term such as "earnings").

Hartford's decision was irrational, contrary to the evidence in the record, or without reasoned explanation. Under the deferential abuse of discretion standard, Hartford's decision must be upheld. Accordingly, Defendant's motion for judgment on the administrative record will be granted, and Plaintiff's motion denied with respect to her claim for additional disability benefits of $4,737.64 per month retroactive to August 11, 2009.

## B. ERISA Estoppel Claim

Plaintiff alternatively contends that Hartford is estopped from denying her benefits under the policy under the doctrine of equitable estoppel. The Fifth Circuit has held that the doctrine of equitable estoppel applies in the context of ERISA claims. *See Mello*, 431 F.3d at 444–45. In order to establish an ERISA estoppel claim, Plaintiff must have introduced evidence showing: (1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances. *Id.*

A plaintiff's reliance on the alleged misrepresentation must be both reasonable and detrimental. *Id.* at 445. The Fifth Circuit has explained that a judicial finding that the terms of the plan are unambiguous is sufficient to defeat the reasonableness of a plaintiff's reliance on a misinterpretation of those terms. *See id.* at 447 ("Because our decisions require that any detrimental reliance on plan language also be 'reasonable,' our finding that the [terms of the Plan] are unambiguous undercuts the reasonableness of any detrimental reliance ...."), (quoting *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 908 (3d Cir.1995); *see also Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir.1998) (noting that a "party's reliance can seldom, if ever, be reasonable or

justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party")).

Here, as explained above, the Court finds that Hartford's policy unambiguously excludes "fringe benefits" such as the *per diem* allowance that Plaintiff received, from the calculation of an insured's Pre-disability Earnings. Accordingly, any reliance Plaintiff may have placed on the inclusion of this benefit in the calculation of her disability benefits is not reasonable.

Furthermore, even if the terms were ambiguous, Plaintiff has not otherwise shown the existence of "extraordinary circumstances" sufficient to invoke estoppel, as required by the third *Mello* element. Although the Fifth Circuit has yet to elaborate on the contours of what circumstances are "extraordinary" for estoppel purposes, it has cited with approval the Third Circuit's approach to the issue. *See E–Systems*, 459 F.3d at 580 n. 3 (5th Cir. 2006) (citing *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir.1994)). Under the Third Circuit's approach, extraordinary circumstances "generally ... involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *See Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir.2003).

Here, Plaintiff has introduced no evidence suggesting any bad faith or fraudulent conduct on behalf of Hartford. In the instant case, at most, Plaintiff has shown only that Hartford initially mis-calculated the amount of disability benefits for which she was eligible based on Plaintiff's representations regarding her earnings, and accepted premiums based on this miscalculation.[37] The case law indicates

---

37. *See* Plaintiff's Memorandum in Opposition, Rec. Doc. 22, p. 3 (arguing that the "extraor-

that these circumstances are not "extraordinary." *See E–Systems,* 459 F.3d. at 580 (finding no extraordinary circumstances where defendants for six years mistakenly sent the plaintiff a monthly disability check in the amount of $1,200 instead of the $50 per month to which he was entitled under the plan); *Sanborn–Alder v. Cigna Grp. Ins.,* 771 F.Supp.2d 713, 731 (S.D.Tex. 2011) (concluding defendants' mistakes in issuing policy did not constitute showing of "extraordinary circumstances" and further noting that "simple errors and omissions, without an accompanying intent to deceive, are not material misrepresentations" that can give rise to an estoppel claim); *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 (3d Cir.1991) (no extraordinary circumstances when totally disabled and hospitalized employee increased his life insurance coverage under a plan that required active, full time status to trigger increased benefits and insurer denied coverage even though employer had deducted additional amounts from salary to cover increased insurance). Hartford's cross motion for judgment on the administrative record will therefore be granted on Plaintiff's ERISA estoppel claim, and Plaintiff's motion will be denied.

### C. Hartford's Right to Recover Overpayments

Finally, the Court turns to Hartford's counterclaim, through which it seeks to recover $40,313.36 in overpaid long-term benefits and $13,680.74 in overpaid short-term benefits. The policy provides Hartford the right to recover from a plan participant any amount that it determines to be an "overpayment." [38] The policy states that an overpayment occurs when Hartford determines that the total amount it has paid in benefits is more than the amount that was due to the insured under the policy, including but not limited to overpayments resulting from:

1) **retroactive awards received from sources listed in the Other Income Benefits definition;**

2) **failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;**

3) **misstatement;**

4) **fraud; or**

5) **any error We may make.**[39]

Here, as explained above, Hartford determined that an overpayment occurred when it mistakenly calculated Plaintiff's "Pre-disability Earnings" to include her *per diem* allowance, which constituted a "fringe benefit" or "extra compensation" under the terms of the policy. Accordingly, because Hartford is entitled to recover the $40,313.36 in overpaid long-term benefits and $13,680.74 in overpaid short-term benefits pursuant to the terms of the policy,[40] Hartford's cross motion for judgment on the administrative record will be granted with respect to its counterclaim, as well.

### CONCLUSION

Accordingly, for all the reasons expressed above, **IT IS ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record (**Rec. Doc. 18**) is hereby **DENIED,** and Hartford's Cross Motion for Judgment on the Administrative Record (**Rec. Doc. 21**) is hereby **GRANTED.**

---

dinary circumstances" element is met because Hartford "inaccurately determine[d]" her premium).

**38.** Rec. Doc. 21–4, Hartford–O'Brien–0040.

**39.** Rec. Doc. 21–4, Hartford–O'Brien–0040.

**40.** Plaintiff does not appear to dispute Hartford's calculations of the amounts due as overpayments under the policy.

Judgment will be entered in accordance with this order.